## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **LIMA ONE CAPITAL SPECIAL SERVICING, INC.**, a Delaware corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>**E.S. REAL ESTATE CONSORTIUM, INC.**, a Georgia corporation; **CONSORTIUM TITLE, LLC**, a Virginia limited liability company; **INTEGRITY SETTLEMENT SERVICES, LLC**,  a Florida limited liability company; **ANEAKA ENGLISH**, an individual; **CASITA SIMPSON**, an individual; and **COLEEN THOMAS**; an individual,<br><br>            Defendants. | CIVIL ACTION FILE NO.: 1:18-CV-04070-MLB |

## PLAINTIFF'S RESPONSE TO DEFENDANT E.S. REAL ESTATE CONSORTIUM, CORP.'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Plaintiff, Lima One Capital Special Servicing, Inc. ("Plaintiff"), states as follows for its Response to E.S. Real Estate Consortium, Corp.'s ("ESREC") Motion to Dismiss and Memorandum in Support:

## INTRODUCTION

ESREC, along with the remaining Defendants, has a long and sordid history of borrowing money and failing to pay it back. So much so that the FBI is investigating Aneaka English and these related entities. For ESREC to describe this transaction as a "failed real estate transaction" is at best misleading. It is clear from the pleadings alone that the Defendants were not involved in the sale or purchase of any real estate, but merely used that as a scheme to receive money from Plaintiff. Further, ESREC blatantly assumes facts that simply do not exist to attack Plaintiff's standing while ignoring the factual allegations contained in the complaint. This is just another delay tactic as ESREC has no viable defenses.

As discussed below, 28 U.S.C. § 1359 is inapplicable in this case as the assignor is not a Georgia citizen itself, therefore, making collusion impossible. Likewise, Plaintiff has alleged specific factual allegations as to ESREC's actions that gave rise to this action. Lastly, ESREC seemingly wants this Court to dismiss the entire case or three claims against all defendants, without it having standing to make arguments on behalf of anyone but itself. For all of these reasons, ESREC's motion fails, and it must be denied with prejudice and costs assessed.

## ARGUMENT & CITATION TO AUTHORITY

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER.

### A. Plaintiff's Complaint Alleges Diversity Jurisdiction

2

ESREC relies on the assignment attached to Plaintiff's complaint to argue the assignment is collusive and created diversity. However, ESREC fails to adequately identify the citizenship of the assignor, Lima One Capital, LLC. As this Court is aware, the citizenship of a limited liability company is based on the citizenship of each of its members, not the state in which it was formed. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir 2004) (stating "a limited liability company is a citizen of any state of which a member of the company is a citizen"). ESREC does not explain how it has determined Lima One Capital, LLC is a Georgia citizen despite claiming its attack is factual, not facial.

In actuality, Lima One Capital, LLC is made up of eight members. Five of those members are individuals, who are all citizens of South Carolina. **Exhibit A**, Affidavit of Josh Woodward, CFO of Lima One Capital, LLC. The remaining three members are two limited liability companies and a limited partnership (hereinafter the "Magnetar Entities"). *Id.* Therefore, to the best of Plaintiff's knowledge, its assignor is not a Georgia citizen for purposes of this action. As the presumption of 28 U.S.C. § 1359 is only applicable if the assignment is used "to manufacture diversity jurisdiction that would not otherwise exist," it is wholly inapplicable in this case. *Gilbert v. Wills*, 834 F.2d 935, 937 (11th Cir. 1987).

3

Lima One Capital, LLC did not assign its interest to Plaintiff to manufacture diversity, but to comply with its investor's requirements that their entities remain anonymous and confidential. *Id.* As discussed in *Kramer v. Carribean Mills*, for an assignment to be collusive under 28 U.S.C. § 1359, a party must show:

1) Assignor retains an interest in the assigned claims;
2) Assignee has no previous connection in the matter; **AND**
3) The Assignment is made for the **sole purpose** of accessing the federal courts.

394 U.S. 823, 827-28 (1969). As discussed above, and proven in the affidavit attached as **Exhibit A**, Lima One Capital, LLC did not assign the cause of action to access the federal courts, but to protect its investors. Therefore, ESREC's attack on the assignment fails under the *Kramer* test as there is a legitimate business purpose for the assignment, and there is no evidence that the assignment created diversity, which means this Court retains jurisdiction pursuant to 28 U.S.C. §1332.

**B.     Plaintiff has properly pled a federal question, providing this Court with subject matter jurisdiction. Further, even is the RICO claim as to ESREC is dismissed; it remains as to all other Defendants.**

As discussed below, the factual allegations included in the Complaint allege a claim against all Defendants pursuant to 28 U.S.C. § 1331. Plaintiff has alleged mail fraud, wire transfer fraud, and a continuing enterprise, again bolstered by the FBI's current investigation into Aneaka English. Further, ESREC does not have

standing to assert any defense or argument on behalf of the other Defendants. Therefore, even if the Court finds the Complaint does not state a claim under 28 U.S.C. § 1964(c) against ESREC (which it does), the claim remains as to the other five Defendants.

For all of these reasons discussed above, the Court has subject matter jurisdiction over this matter. There is diversity amongst the parties; the assignment was not collusive; and the Complaint alleges the facts necessary to state a RICO claim.

## II.   COUNTS I, II, AND IV OF THE COMPLAINT STATE CLAIMS FOR WHICH RELIEF MAY BE GRANTED.

### A.   Standard of Review

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint, accepting as true all allegations contained therein. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). While ESREC's Motion correctly states the current pleading requirements as discussed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), it is important to note that the 11th Circuit has stated "the rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary

element." *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371 (11th Cir. 2010)(citations omitted).

## B. The Complaint Alleges Facts Sufficient to Plead a RICO Claim Pursuant to 18 U.S.C. § 1964 (Count IV).

In its Complaint, Plaintiff alleges the following specific facts:

- In December 2017, Aneaka English ("English") approached Lima One Capital, LLC to discuss financing of a real estate sale.  **Exhibit B**, pg. 4.
- English provided a Purchase Agreement dated October 15, 2017. *Id.*
- English represented herself as an agent of the borrower. *Id.*
- English provided a HUD statement that purported to show where the Lima One Capital, LLC's funds would be paid after the sale. *Id.*
- English provided a second HUD statement that purported to show how Lima One Capital, LLC would be repaid its funds. *Id.*
- English stated funds would be returned to Lima One on the date of closing. *Id.*
- Integrity Settlement Solutions ("Integrity") asserted it had an errors and omissions policy, which was false as no policy existed. *Id.* at pgs. 5-6.
- Coleen Thomas ("Thomas") sent an email to Lima One Capital, LLC stating Integrity was in possession of the funds necessary to repay the loan. *Id.* at pg. 5.
- Lima One was not repaid pursuant to English's and Thomas' representations.

ESREC argues in its Motion that Plaintiff has not properly pled violations of 18 U.S.C. § 1341 and 1342 as required to qualify as a "pattern of racketeering activity" pursuant to 18 U.S.C. § 1961(5).

However, the Complaint alleges that as a result of these misrepresentations, Lima One Capital, LLC wired funds to the Defendants.  **Exhibit B**, pg. 5, ¶ 22. This is a clear violation of 18 U.S.C. § 1343, which states in relevant part:

6

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Accepting all factual allegations as true (as required in a FRCP 12(b)(6) motion), English, Thomas, and the other Defendants working in concert created the scheme that convinced Lima One Capital, LLC to wire funds; therefore, they have violated 18 U.S.C. § 1343.

Similarly, Plaintiff stated that English mailed a check to Lima One Capital, LLC on March 7, 2018 and misrepresented the check as payment in full of the amounts owed. *Id.* at pgs. 5-6, ¶¶ 25-27. Therefore, English violated 18 U.S.C. § 1341, which states in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly

7

> causes to be delivered by mail or such carrier according to the
> direction thereon, or at the place at which it is directed to be delivered
> by the person to whom it is addressed, any such matter or thing, shall
> be fined under this title or imprisoned not more than 20 years, or both.

While ESREC claims it cannot determine what violations of § 1341 and § 1343

Plaintiff is relying on as the basis of its RICO claim, a review of the factual

allegations in the Complaint, and the applicable statutes clearly shows that Plaintiff

has met it burden in pleading a RICO action as against ESREC.

### C. The Complaint Alleges Facts Sufficient to Plead a Fraudulent Misrepresentation Claim (Count I).

In addition to the facts listed above in Section B, Plaintiff's Complaint also

includes added allegations that specifically address the fraudulent

misrepresentation claim as to English and Thomas. Specifically, Plaintiff alleges

that English made numerous misrepresentations about the sale of the property,

execution of sale documents, and repayment of funds owed to Lima One Capital,

LLC. *Id.* at pg. 7. Further, English knew those misrepresentations were false

when she made them, Lima One Capital, LLC reasonably relied on the previously

described misrepresentations to wire the funds, and Plaintiff was damaged as a

result. *Id.* While ESREC attempts to describe the Complaint as a mere recitation

of elements, it is not. It is impossible for Plaintiff to have specific knowledge as to

English's intent at the time she lied to Lima One Capital, LLC about the business

8

deal, but the circumstantial evidence, as described in detail in the Complaint, shows that English knew when she promised repayment that neither she, nor ESREC, was going to make that payment.

Similarly, Plaintiff specifically alleges that Thomas made misrepresentations to Lima One Capital, LLC regarding Integrity's possession of funds to repay Lima One and that Integrity had E & O insurance to cover any loss related to the transaction.   Only English and Thomas know if these misrepresentations were made in their respective individual capacities or as agents of ESREC and Integrity. It is impossible, and unnecessary, for Plaintiff to determine this information without discovery.   Therefore, the Complaint seeks relief from all involved as these statements were clearly false, it was known to the speakers when they were made that they were false, and indeed, Lima One Capital, LLC relied on those statements to its detriment.  Further, ESREC's argument that it cannot determine how to defend this action is nonsense as English is ESREC's president, and ESREC and English should know if English was acting in her official capacity or otherwise.

The Complaint states a claim for fraudulent misrepresentation as it relates to ESREC based on English's statements and actions, and ESREC's motion must be denied.

**D.   The Complaint Alleges Facts Sufficient to Plead a Conspiracy to Commit Fraud Claim (Count II).**

Just as discussed above, the factual allegations contained in the Complaint show that Plaintiff has properly plead a conspiracy to commit fraud claim.  English presented herself as a representative of the borrower who required funding; Casita Simpson ("Simpson") represented herself as an agent of the borrower who was going to execute the closing documents; and Thomas served as the title company representative who received and distributed the funds.  **Exhibit B**, pg. 9; ¶¶ 52-54. These actions show the Defendants had a plan and they executed that plan to steal funds from Lima One Capital, LLC as required by Georgia law.  *Howard v. Sellers & Warren, P.C., et al.*, 309 Ga. App. 302 (2011).  Therefore, Plaintiff's Conspiracy to Commit Fraud claim states a claim for which relief may be granted as against ESREC, and ESREC's Motion must be dismissed.

**III.   ESREC CANNOT REQUEST DISMISSAL OF THE CLAIMS ON BEHALF OF THE REMAINING DEFENDANTS.**

Throughout its Motion, ESREC claims to have knowledge of what the other Defendants can and cannot determine from the Complaint.  However, none of those Defendants have appeared in this action.  If, or until, those Defendants appear in this action, they will have the right to raise any defenses allowed to them by law.  However, ESREC cannot simply request that this Court dismiss claims

10

against other Defendants. If the Court determines one or more claims should be dismissed as it relates to ESREC specifically (it should not), it must limit that ruling to ESREC alone.

## CONCLUSION

This motion appears to be nothing more than another delay tactic by ESREC. Despite English admitting numerous times that the money is owed and has not been repaid, and having made partial payments, ESREC now claims it cannot defend this action.

Plaintiff has properly plead its claims against all Defendants, and this Court has subject matter jurisdiction to resolve the federal question (i.e. the RICO claim) as well as diversity jurisdiction as all parties are citizens of different states and the amount in controversy exceeds $75,000.00.

Lastly, to the extent ESREC seeks dismissal of any claims as they relate to the other named Defendants, it simply does not have a legal basis to do so. While the remaining Defendants may be attempting to hide behind ESREC and its counsel, Plaintiff has the right to litigate this matter as to all Defendants. If those Defendants want to concur in the relief sought by ESREC, they can appear and do so.

HAWKINS PARNELL
THACKSTON & YOUNG LLP

11

/s/ Ronald G. Polly, Jr.
Ronald G. Polly, Jr.
Georgia Bar No. 583264
rpolly@hptylaw.com
303 Peachtree Street, NE
Suite 4000
Atlanta, Georgia 30308
Telephone:  (404) 614-7400
Facsimile:   (404) 614-7500

Emily M. Coyle (P74123)
ecoyle@plunkettcooney.com
**PLUNKETT COONEY, P.C.**
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
Telephone:  (810) 342-7007
Facsimile:   (248) 901-4040

*Attorneys for Plaintiff*

### Proof of Service

The undersigned certifies that on November 2, 2018, a copy of the foregoing document was served upon the attorney(s) of record in this matter at their stated business address as disclosed by the records herein via:

☐ Hand delivery          ☐ Overnight mail
☐ U.S. Mail               ☐ Facsimile
☐ Email                   ☒ Electronic Filing System

I declare under the penalty of perjury that the foregoing statement is true to the best of my information, knowledge and belief.

/s/ Doreen Stanard
Doreen Stanard

Open.26479.80652.21154858-1

12

# EXHIBIT
# A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

**LIMA ONE CAPITAL SPECIAL SERVICING, INC.**, a Delaware corporation,

Plaintiff,

vs.

**E.S. REAL ESTATE CONSORTIUM, INC.**, a Georgia corporation; **CONSORTIUM TITLE, LLC**, a Virginia limited liability company; **INTEGRITY SETTLEMENT SERVICES, LLC**, a Florida limited liability company; **ANEAKA ENGLISH**, an individual; **CASITA SIMPSON**, an individual; and **COLEEN THOMAS**; an individual,

Defendants.

CIVIL ACTION FILE NO.:
1:18-CV-04070-MLB

## AFFIDAVIT OF JOSH WOODWARD IN SUPPORT OF PLAINTIFF'S RESPONSE

STATE OF GEORGIA        )
                        )ss
COUNTY OF _____      )

Josh Woodward, being first duly sworn, deposes and states:

1. I am the Chief Financial Officer of Lima One Capital, LLC.

2. I am involved in the day to day business of Lima One Capital, LLC.

3. There are five individual persons who have a membership interest in Lima One Capital, LLC:   John Warren, John Thompson, Jeff Tennyson, Josh Woodward, and Rankin Blair.

4.     All the individuals listed in paragraph 3 reside in South Carolina, and our citizens of South Carolina.

5.     The remaining members of Lima One Capital, LLC are two limited liability companies and a limited partnership.

6.     Due to the confidentiality concerns of these company members, this cause of action was assigned to a servicing company for litigation.

7.     of $35.50.

November 2ⁿᵈ, 2018

Josh Woodward
Chief Financial Officer
Lime One Capital, LLC

Subscribed and sworn to before me this 2ʳᵈ _____ day of November, 2018.

_____, Notary Public

My commission expires: _____7/12/2026_____

Open.18641.71875.21169764-1

# EXHIBIT
# B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **LIMA ONE CAPITAL SPECIAL SERVICING, INC.**, a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> **E.S. REAL ESTATE CONSORTIUM, CORP.**, a Georgia corporation; **CONSORTIUM TITLE, LLC**, a Virginia limited liability company; **INTEGRITY SETTLEMENT SERVICES, LLC**, a Florida limited liability company; **ANEAKA ENGLISH**, an individual; **CASITA SIMPSON**, an individual; and **COLEEN THOMAS**; an individual, <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO.:_____ |

## COMPLAINT

Plaintiff, Lima One Capital Special Servicing, Inc. ("Plaintiff"), states as follows for its Complaint:

1.    Plaintiff is a Delaware corporation with its principal place of business located in Greenville, South Carolina.    Therefore, for purposes of diversity, Plaintiff is a citizen of Delaware and South Carolina.

2.     E.S. Real Estate Consortium, Corp. ("E.S. Real Estate") is a Georgia corporation that has its principal place of business at 5317 Peachtree Boulevard, Suite 316, Chamblee, Georgia 30341.   Therefore, for purposes of diversity, E.S. Real Estate is a citizen of Georgia.

3.     Coleen Thomas ("Thomas") is an individual who upon information and belief is domiciled in Virginia.  Therefore, for purposes of diversity, Thomas is a citizen of Virginia.

4.     Consortium Title, LLC ("Consortium") is a Virginia limited liability company, which upon information and belief has one member, Coleen Thomas. Therefore, for purposes of diversity, Consortium is a citizen of Virginia as Thomas is domiciled there.

5.     Integrity Settlement Services, LLC ("Integrity") is a Florida limited liability company, which, upon information and belief, has one member, Consortium, which has one member, Thomas, as discussed above.   Therefore, for purposes of diversity, Integrity is a citizen of Virginia.

6.     Aneaka English ("English") is an individual who upon information and belief is domiciled in Georgia.  Therefore, for purposes of diversity, English is a citizen of Georgia.

2

7.    Casita Simpson ("Simpson") is an individual who upon information and belief is domiciled in Florida. Therefore, for purposes of diversity, Simpson is a citizen of Florida.

## JURISDICTION AND VENUE

8.    Jurisdiction over this matter properly rests within this Honorable Court pursuant to 28 UCS §1331 and/or §1332. The complaint includes a federal question, specifically Plaintiff's claim that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as described below. Further, the amount in controversy is in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs and none of the Defendants is a citizen of Delaware or South Carolina while Plaintiff is a citizen of Delaware and South Carolina, which means there is complete diversity amongst the parties.

9.    Venue is proper in this Honorable Court pursuant to 28 USC §1391(a) and (b)(3).

## GENERAL ALLEGATIONS

10.    Lima One Capital, LLC ("Lima One") is in the business of lending funds for short term real estate transactions, among other businesses.

3

11.     In December 2017, English, on behalf of E.S. Real Estate, requested funding related to the closing of real property commonly known as 1564 Park Road SE, Atlanta, GA 30315 (the "Property").

12.     English, on her own or as an agent of E.S. Real Estate, provided Lima One with a Purchase Sale Agreement dated October 15, 2017 between Ruth Fermino and Wholesale Listings Co Ltd (the "Borrower").  **Exhibit A.**

13.     English stated that she represented the Borrower.

14.     English, on her own or as an agent of E.S. Real Estate, sent Lima One a HUD Statement allegedly showing how funds would be disbursed after the Borrower purchased the Property.  **Exhibit B.**

15.     English told Lima One that the Borrower intended to immediately sell the Property to ESRG Georgia Group I ("ESRG") on the same date the Borrower purchased it.

16.     English, on her own or as an agent of E.S. Real Estate, sent Lima One a HUD Statement allegedly showing the Borrower selling the Property to ESRG and repaying Lima One the total amount it was owed of $255,774.57.  **Exhibit C.**

17.     The Borrower chose Integrity as its title company to close the real estate transactions.

4

18.     Integrity provided a Certificate of Liability Insurance regarding its errors and omissions policy prior to closing.

19.     Lima One does not close these types of transactions or wire funds to the title company until it receives confirmation that the second purchaser's funds are received by the title company and are being held in escrow.

20.     Thomas sent an e-mail to Lima One on January 4, 2018 confirming Integrity was in receipt of the funds from ESRG to purchase the Property from the Borrower.

21.     On January 8, 2018, Lima One wired $251,375.50 to Integrity through a JPMorgan Chase account to fund the Borrower's purchase of the Property.

22.     Pursuant to its agreement with English and E.S. Real Estate, Lima One was to receive $255,774.57 within 24 hours of the initial wire transfer.

23.     English refused to pay Lima One what it was owed under the agreement, instead feigning ignorance.

24.     Lima One attempted to file a claim against Integrity's alleged errors and omissions insurance, but no policy exists.

25.     On or about March 7, 2018, English mailed a check to Lima One through the United States Postal Service.

5

26.    English held the check out to be payment in full of the amounts owed to Lima One.

27.    The check was returned to Lima One's bank due to insufficient funds in the drawer's account.

28.    On March 21, 2018, English wired the sum of $51,370.00 to Lima One claiming once she received confirmation of those funds being received that she would pay the remainder through a second wire transaction.

29.    On May 7, 2018, English wired the sum of $50,000.00 to Lima One as partial payment on the amount outstanding.

30.    Lima One has not received the balance of the outstanding obligation.

31.    Lima One assigned its rights to any cause of action arising from this transaction to Plaintiff in an Assignment dated August 21, 2018 and attached hereto as **Exhibit D**.

## COUNT I – FRAUDULENT MISREPRESENTATION

32.    Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

33.    As described above, English made numerous fraudulent misrepresentations to Lima One.

34.    English claimed that she represented the Borrower.

6

35.   English claimed the Borrower was going to purchase the Property and then immediately sell it to ESRG.

36.   English claimed that Simpson would execute documents on behalf of the Borrower to close the transaction.

37.   English's claims were false because the Borrower was a sham company set up by Simpson.

38.   Upon information and belief, Simpson is a paralegal employed by English.

39.   English knew that her representations were false at the time they were made.

40.   English made these misrepresentations intending that Lima One rely on them.

41.   Lima One reasonably relied on these misrepresentations.

42.   In reliance upon the misrepresentations, Lima One has suffered damages of not less than $152,404.57 plus attorney fees and costs.

43.   Thomas falsely claimed that Integrity was in possession of the ESRG funds necessary to repay Lima One.

44.   Thomas falsely claimed that Integrity had insurance to cover such losses.

7

45.    Thomas knew when she made the claims that they were false.

46.    Thomas made the misrepresentations intending that Lima One would rely on them.

47.    Lima One did in fact rely on the misrepresentations when it wired the funds to Integrity.

48.    Due to Thomas' misrepresentations, Lima One has suffered damages of not less than $152,404.57 plus attorney fees and costs.

WHEREFORE, Plaintiff Lima One Capital Special Servicing, Inc. respectfully requests that this Honorable Court enter a judgment in its favor and against Defendants E.S. Real Estate Consortium, Corp., Consortium Title, LLC, Integrity Settlement Solutions, LLC, Aneaka English, Coleen Thomas, and Casita Simpson, jointly and severally, in the amount of $152,404.57 plus attorney fees and costs that continue to accrue.

## COUNT II – CONSPIRACY TO COMMIT FRAUD

49.    Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

50.    As described above, the Defendants have perpetrated a fraud against Lima One.

8

51.   The Defendants' individual actions, working in concert, created a plan to defraud Lima One.

52.   English represented to Lima One that she had a purchaser for the Property who would then immediately sell the property to a third party.

53.   Simpson represented herself as the Borrower's authorized agent who was going to purchase the Property.

54.   Thomas served as the conduit to obtain the funds by misrepresenting to Lima One that Integrity was in possession of ESRG's funds to purchase the Property and repay Lima One.

55.   Through these actions and those previously discussed above, the Defendants acted in concert to defraud Lima One.

56.   The Defendants stole $255,774.57 from Lima One through the conspiracy.

WHEREFORE, Plaintiff Lima One Capital Special Servicing, Inc. respectfully requests that this Honorable Court enter a judgment in its favor and against Defendants E.S. Real Estate Consortium, Corp., Consortium Title, LLC, Integrity Settlement Solutions, LLC, Aneaka English, Coleen Thomas, and Casita Simpson, jointly and severally, in the amount of $152,404.57 plus attorney fees and costs that continue to accrue.

9

## COUNT III – UNJUST ENRICHMENT

57.   Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

58.   As described above, Lima One wired $251,375.50 to Integrity in relation to the fraudulent closing.

59.   Lima One expected payment in return of $255,774.57 based on the parties' agreement.

60.   E.S. Real Estate, Consortium, Integrity, English, Simpson and Thomas have received an unjust benefit at the expense of Lima One based on their conduct.

61.   It would be unjust for the Defendants to retain the benefit.

WHEREFORE, Plaintiff Lima One Capital Special Servicing, Inc. respectfully requests that this Honorable Court enter a judgment in its favor and against Defendants E.S. Real Estate Consortium, Corp., Consortium Title, LLC, Integrity Settlement Solutions, LLC, Aneaka English, Coleen Thomas, and Casita Simpson, jointly and severally, in the amount of $152,404.57 plus attorney fees and costs that continue to accrue.

10

## **COUNT IV – CIVIL RICO PURSUANT TO 18 U.S.C. § 1964**

62.    Plaintiff incorporates the allegations set forth above by reference, with the same force and effect as if fully repeated.

63.    Defendants by virtue of their agency relationships with each other formed an enterprise (the "Enterprise").

64.    Through the Enterprise, Defendants engaged in racketeering activity to wit wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. § 1341.

65.    Violations of 18 U.S.C. § 1341 and 1343 are each a "racketeering activity" as that term is defined in 18 U.S.C. § 1961(1).

66.    The Defendants received an economic benefit through the Enterprise.

67.    The conduct alleged in this complaint constitutes a "pattern of racketeering activity," as that term is defined in 18 U.S.C. § 1961(5) as Lima One has alleged two acts that constitute racketeering activity, specifically violations of 18 U.S.C. § 1341 and § 1343, that occurred after the enactment of the RICO Act and these activities occurred within the last 10 years.

68.    English has committed mail and/or wire fraud on at least two previous occasions against two other victims, and there is a serious threat that she will continue her criminal conduct beyond the instances in this complaint.

11

69.     Simpson and Thomas aided and abetted English in engaging in racketeering behavior by setting up sham companies, drafting fake closing documents for the sale of the Property, and misrepresenting that they were ready, willing and able to fund the sale as agreed.

70.     The Enterprise will continue to operate and defraud consumers and businesses alike through an ongoing Ponzi scheme if not stopped by the Court.

71.     As a direct and proximate cause of Defendants' racketeering activities, Plaintiff has suffered economic damages and it requests treble damages and reasonable attorney fees pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Lima One Capital Special Servicing, Inc. respectfully requests that this Honorable Court enter a judgment in its favor and against Defendants E.S. Real Estate Consortium, Corp., Consortium Title, LLC, Integrity Settlement Solutions, LLC, Aneaka English, Coleen Thomas, and Casita Simpson, jointly and severally, in the amount of $463,213.71 plus attorney fees and costs that continue to accrue.

Respectfully submitted this 28th day of August, 2018.

*[Intentionally left blank]*

*[Signature on following page]*

12

**HAWKINS PARNELL**
**THACKSTON & YOUNG LLP**

*/s/ Ronald G. Polly, Jr.*

Ronald G. Polly, Jr.
Georgia Bar No. 583264
rpolly@hptylaw.com
303 Peachtree Street, NE
Suite 4000
Atlanta, Georgia 30308
Telephone:   (404) 614-7400
Facsimile:   (404) 614-7500


Richard G. Szymczak (P29230)
rszymczak@plunkettcooney.com
*(to be admitted pro hac vice)*
Emily M. Coyle (P74123)
ecoyle@plunkettcooney.com
*(to be admitted pro hac vice)*
**PLUNKETT COONEY, P.C.**
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
Telephone:   (810) 342-7007
Facsimile:   (248) 901-4040

*Attorneys for Plaintiff*

Open.26479.80652.20786379-1

13

# Exhibit "A"

CONTRACT FOR SALE OF REAL ESTATE

This is a CONTRACT between Ruth Fermino (hereinafter Seller or Sellers) and Wholesale Listings Co Ltd. (hereinafter Buyer or Buyers), dated this 15th day of October 2017.

Be it known to all that in consideration of the mutual covenants and agreements contained in this Contract as written and no other documents, the Seller agrees to sell to Buyer(s) and Buyer(s) agree to purchase from the Seller(s) all the lands and premises situated in Dekalb County, State of Georgia, described in the following section:

1564 Park Rd SE Atlanta, GA 30315

for the sum of $250,500.00 Two Hundred Fifty Thousand Five Hundred 00/100 Dollars, known as the Purchase Price.

Towards that Purchase Price, $3,000.00, Three Thousand 00/100 Dollars has paid on the execution of this Contract and the receipt of which is hereby acknowledged by Sellers, and the remained of the Purchase Price is to be paid to the order of the seller at the times and in the amounts as described in the following section:

Remainder of Purchase Price payable as follows: Cash at Closing

Buyer(s)'s Right to Possession

The Buyer(s) shall be entitled to possession of the lands on October 31, 2017, and may retain such possession so long as Buyer(s) is not in default under the terms of this Contract.

Buyer(s) Duty to prevent waste, prevent encumbrances.

Buyer(s) agree that at all times Buyer(s) will keep the premises and buildings (now or hereafter erected) n good condition and repair and will not permit any waste or strip of the land or premises, that the Buyer will keep the premises free from construction and all other liens and same the Seller(s) harmless from such liens and reimburse Seller(s) all costa and attorneys's fees incurred by Seller(s) in defending against such liens; that Buyer(s) will pay all taxes hereafter levied against the property, as well as all water service rents, public charges and municipal liens which hereafter lawfully may be imposed upon the premises, all promptly before the same or any party thereof become past due and delinquent.


Buyer(s) Duty to provide insurance.

At Buyer(s)'s expense, Buyer(s) will insure and keep insured all buildings now or hereafter erected on the premises against loss or damage by fire in an amount of not less than $_____ in a company or companies satisfactory to the Seller(s), specifically naming seller(s) as an additional insured, with losses payable first to the Seller(s) and then to the Buyer(s) as their respective interest may appear and all policies of insurance shall be delivered to the Seiler(s) as soon as insured.

Seller(s)'s rights to cure defects without waiver of breach of contract.

If the Buyer(s) fail to pay any liens, costs, water rents, taxes or charges, the Seller(s) may do so and any payment so made shall be added to and become part of the debt secured by the Contract and shall bear interest at the above stated rate per annum, without waiver, however, on any right arising to the Seller(s) for Buyer(s)'s breach on contract.

Seller(s)'s Obligation to Provide Marketable Title

The Seller(s) agrees to furnish within 15 days of the date of the Contract, at Seller(s)'s expense a title insurance policies insuring in an amount equal to the purchase price, marketable title in and to the promises in the Seller(s) on or subsequent to the date of this Contract and further, save and except the usual printed exceptions and the building or other restrictions and easements now of record, if any. Seller(s) also agrees that when the purchase price is fully paid and upon request and upon surrender to this Contract, Seller(s) will deliver a good and sufficient deed conveying the premises in fee simple until the Buyer(s), Buyer(s)'s heirs, assigns, free and clear of encumbrances as of the date herein identified and fee and clear of all encumbrances that date placed, permitted or arising by, through or under the Sellers(s), except the easements, restrictions and the taxes, municipal liens, water rents and public charges as assumed by the Buyer(s) and further excepting all liens and encumbrances created by the Buyer(s) or Buyer(s)'s assigns.

Time is of the essence

It is further understood and agreed between the parties that time is of the essence

in this Contact, and should the Buyer(s) fail to make the payments as required, or any of them, punctually within 20 days of the time limited therefor, or failure to keep any of its obligations under this Contract, then the Seller(s) shall have the following rights and options:

(1) to declare the contract cancelled for default and thus null and void and to declare the Buyer(s)'s rights forfeited and the debt extinguished, and to retain sums previously paid under this Contract, subject to the Seller(s) complying with all applicable law pertaining to the exercise of this remedy, including ORS 93.905, et seq., or successor statutes;

(2) to declare the whole unpaid principal balance of the purchase price with the interest thereon at once due and payable; and/or

(3) to foreclose this Contract by suit in equity.

In any of such case, all rights and interest created or then existing in favor of the Buyer(sa) as against the Seller(s) hall utterly cease and the right to possession of the premises described above and all other rights acquired by the Buyer(s) under this Contract revert to an revest in the Seller(s) without an act of re-entry, or any other act of the seller to be performed and without any right of the Buyer(s) to return, reclaim or seek compensation of monies paid on the account of the purchase un the property as absolutely, fully and completely as if this contract and such payment s had never been made, and in case of such default all payment previously made on this contract are to be retained by and belong to the seller as the agreed and reasonable rent of the premises up to the time of such default and the Seller(s) in case od such default, shall have right immediately, or at any time thereafter, to enter upon the land, without process of law, and take immediate possession thereof, together with all the improvements and appurtenances thereto on thereto belonging.

Buyer(s) further agrees that Seller(s)'s failure to at any time require performance by Buyer(s) of

any provision shall in no way affect the Seller(s)'s right to enforce the same, nor shall any waiver by the Seller(s) of any breach of any provision bye a waiver or any succeeding breach of any such provision, or a waiver of the provision itself.

Seller(s), Seller(s)'s agents, and the holder of any existing encumbrance to which the lands and premises are subject may enter upon the lands and premises at reasonable times, upon reasonable prior notice, for the purpose in inspecting the property.

In case suit or action is instituted to foreclose this Contract or t enforce any provision thereof, the losing party in any suit or action shall pay the reasonable attorney's fees to be fixed by the trial court in favor of the prevailing party, and if any appeal is take from the decision of the trial court, such further sum as may be fixed by the appellate court as the prevailing party's reasonable attorney's fees and costs in the appellate court.

In construing this CONTRACT, where the context requires, the singular includes the plural, grammatical changes shall be made so that the deed shall apply equally to corporations and to individuals, and handwritten or typed changes control the printed text.

This Contract shall bind and inure to the benefit of, as the circumstances, may require, not only the immediate parties hereto, but also their respective heirs, assigns, executors, administrators, personal representatives and successors in interest as well

In witness whereof, the Buyer(s) and Seller(s) have executed this instrument in duplicate this 5th day of October, year 2017, and if any of the undersigned ins a corporation, it has caused its name to be signed by an officer or other person duly authorized to do so by action of the board of directors.

Purchaser: ~~Ruth Fermino~~                          Date:_____

Purchaser: _Anita Simpson_                            Date:_____

Seller: Ruth Fermines                                 Date:_____

Seller:_____                     Date:_____

Contingency release clause

If you have not specified a deadline for your contingencies, such as 5 or 10 days for a professional inspection, or 30 days for mortgage approval, you can expect a well-advised home seller to set a time limit on your contingencies. Or, if you make your home purchase contract contingent on the sale of your current residence (which few home sellers will accept), expect the seller to counteroffer, giving you 24 or 48 hours after an acceptable second purchase offer is received from a second buyer to remove your contingency clause for sale of your old home. This is reasonable and fair to both buyer and seller.

An "As Is" clause

Some home sellers insist on selling their homes "as is." That means the seller and realty agent make no representations or warranties and won't pay for any repairs. However, the seller and realty agents must still disclose any known home defects to the buyer. Avoid agreeing to an "as is" clause if you want the seller to pay for repairs of known serious defects.

When describing the purchase terms, don't specify "All cash to seller" if you require a new mortgage to provide that cash. Be sure your offer contains a clause making your offer contingent on approval of the mortgage. Even if you got preapproved for a mortgage, the lender can avoid making the loan by low-balling the appraisal.

The mortgage you want to obtain should be specified with detail, such as a new 30-year fixed interest rate mortgage of at least $100,000 with interest not exceeding 8 percent, a loan fee of not more than 2 percent, and a monthly payment not exceeding $733.76. If you want the seller to help finance the sale, by carrying back either a first or second mortgage, here is where you specify the terms you want.

Personal property

If you want any personal property included in the home sale, such as the kitchen appliances, be sure to specifically itemize them in your purchase offer. For example, specify the "General Electric side-by-side refrigerator with electronic monitor now on the premises." This stops the seller from substituting inferior replacement personal property at the last minute.

Time for acceptance of your purchase offer

Your purchase offer should contain a short time for the seller's acceptance. Twenty-four hours is usually sufficient unless the seller is out of town. Don't make your offer valid for a long time period because then it will be "shopped" by the realty agent to see if a better offer from another buyer can be obtained.

•A professional inspection

The buyer should pay for the professional inspection because it's for the buyer's benefit. Accompany the professional inspector. When a defect discovered is serious, such as a cracked chimney, expect the seller to pay for the repair. If the seller refuses to pay for major necessary repairs, disapprove the report and get your good faith deposit refunded.

•Seller's disclosure of known defects

Many states, led by California and Maine, now require home sellers and their realty agents to disclose in writing any known defects in the residence. If your state requires seller disclosure of defects, your purchase offer should be contingent upon your approval of the seller's disclosure.

•Liquidated damages clause

This clause specifies maximum damages a defaulting buyer must pay to the home seller if the buyer doesn't complete the purchase as agreed. Some state laws set maximum liquidated damages. As a buyer, you may want to agree to liquidated damages so you can't be held liable for more than the specified sum if you default.

•Arbitration of disputes clause

Most printed real estate purchase contracts now contain an optional clause whereby the buyer and seller agree to arbitrate disputes. Misguided real estate agents, blindly following recommendations from their real estate trade groups, often suggest signing the arbitration clause. I strongly disagree. Too many uncontrollable things can go wrong with arbitration of disputes. My recommendation is don't agree to arbitration. If a dispute arises later, at that time you can decide if you prefer to go to arbitration or mediation rather than become involved in a lawsuit.
·An all-inclusive weasel clause

Although the professional inspection contingency clause is sufficient, you might want to also include an all-inclusive weasel clause such as "This purchase offer is contingent upon buyer's attorney satisfactory inspection and approval of the purchase contract within 10 business days." This gives you a "free look" while your attorney, CPA or other trusted business advisor reviews the agreement.

Article 3. Purchaser's Mortgage Contingency

3.01 Application. If an amount is specified at item VIII, Purchaser will (promptly after this Contract is signed) use best efforts to obtain a first mortgage on the Premises in that amount and on the terms specified in section D-3.

3.02 Alternate Financing. If Purchaser is unable to obtain such commitment and gives notice thereof to Seller by the time specified in or determined pursuant to section D-3-j, Seller may within 21 days after the effective date of such notice by Purchaser (a) procure for Purchaser a firm commitment from an institutional lender for a first mortgage loan meeting such terms or (b) accept a Purchase Money Mortgage on such terms. If Seller does so within such additional 21-day time period, item VIII and section D-3 will no longer apply; otherwise this Contract will terminate and section 1 7.03 will apply.

3.03 A lender that makes any such loan is referred to herein as "Purchaser's Lender."

Article 4. Title Insurance and Condition of Title

4.01 Title Commitment. Promptly after the Execution Date Purchaser will apply (directly or through Purchaser's Lender) for issuance by Title Insurer of a commitment for an owner's title insurance policy.

a.The commitment is (i) to be in the amount of the Purchase Price, (ii) to include a zoning endorsement that insures Purchaser that the existing structures on, and the present use of, the

Real Estate do not violate any zoning laws, regulations and ordinances, (iii) to include extended coverage over general exceptions, and (iv) to cover title to the Real Estate on or after the Date of Execution.

b.On receipt of the commitment Purchaser will promptly cause a copy of the commitment to be delivered to Seller's attorney. Seller will use best efforts to cause the commitment to conform to the condition of title specified in Section 4.02 by the earlier of (i) 63 days after Seller receives a copy of the commitment and (ii) the expiration date of any written loan commitment of Purchaser's Lender that was delivered to Purchaser prior to the scheduled date of Closing.

c.Seller will pay for the title insurance commitment and the resulting owner's title policy.

4.02 Condition of Title. Seller will use best efforts to convey, and Purchaser will accept if ten dered, fee simple title to the Real Estate in accordance with the terms of this Contract, subject only to (a) the matters set forth in Schedule B ("Permitted Exceptions"), (b) matters that are insured against pursuant to section 15.04-b, and (c) any other matters as to which both (i) Title Insurer is willing, without additional premium, to insure by endorsement and (ii) Purchaser's Lender, if any, will accept, except that if such acceptance by Purchaser's Lender is unreasonably withheld or delayed, the acce ptance will be deemed to have been given.

Article 5. Inspection, Due Diligence and Termination

5.01 Information Regarding the Premises. Within ten days from the Date of Execution Seller will make available to Purchaser for inspection and copying (a) the documents that fix all the terms of any Leases and of any Tenancies, (b) the documents that are referred to in sections 8.04, 8.06, 8.07 and 8.08, and (c) such building plans and specifications, and such operating statements an d balance sheets for the current fiscal year and for the immediately preceding fiscal year, as are in the possession or control of Seller and relate to the Premises.

5.02 Inspection of the Premises. Within 35 days after the Date of Execution Purchaser may inspect the Premises and obtain soil tests and an environmental audit of the Premises, all subject to the rights of any tenants. Seller will use best efforts to obtain any necessary consents from tenants.

5.03 Purchaser's Electi on to Terminate. Purchaser may elect to terminate this Contract by notice

to Seller at any time prior to five days after expiration of the time period that is provided for by section 5.02 if in Purchaser's absolute discretion, which is not subject to question or review for any reason, (a) the material that is described in section 5.01 has not been made available to Purchaser as called for by that section, (b) Purchaser has not been able to inspect the Premises and obtain soil tests and an environmental audit of the Premises, or (c) Purchaser is dissatisfied with any matters disclosed by such documents, inspection or tests. If Purchaser so elects to terminate this Contract, section 17.03 will apply.

5.04 Acceptance of the Premises. If Purchaser does not elect to terminate this Contract pursuant to section 5.03 and Purchaser is otherwise required to proceed hereunder, Seller will deliver (and Purchaser will accept) the Premises in substantially the same condition at closing as on the Date of Execution, except for ordinary wear and tear, and matters described in Article 11, but Purchaser will have the benefit of any representations and warranties by Seller relating to the Premises.

Purchaser: _____   Date: _____

Purchaser: _____   Date: _____

Seller: _____   Date: _____

Seller: _____   Date: _____

CONTRACT FOR SALE OF REAL ESTATE

This is a CONTRACT between Wholesale Listings Ltd Co (hereinafter Seller or Sellers) and ESRG Georgia Group I (hereinafter Buyer or Buyers), dated this 18th day of October 2017.

Be it known to all that in consideration of the mutual covenants and agreements contained in this Contract as written and no other documents, the Seller agrees to sell to Buyer(s) and Buyer(s) agree to purchase from the Seller(s) all the lands and premises situated in Dekalb County, State of Georgia, described in the following section:

1564 Park Rd SE Atlanta, GA 30315

for the sum of $300,000.00 Three Hundred Thousand 00/100 Dollars, known as the Purchase Price.

Towards that Purchase Price, $3,000.00, Three Thousand 00/100 Dollars has paid on the execution of this Contract and the receipt of which is hereby acknowledged by Sellers, and the remained of the Purchase Price is to be paid to the order of the seller at the times and in the amounts as described in the following section:

Remainder of Purchase Price payable as follows: Cash at Closing

Buyer(s)'s Right to Possession

The Buyer(s) shall be entitled to possession of the lands on October 31, 2017, and may retain such possession so long as Buyer(s) is not in default under the terms of this Contract.

Buyer(s) Duty to prevent waste, prevent encumbrances.

Buyer(s) agree that at all times Buyer(s) will keep the premises and buildings (now or hereafter erected) n good condition and repair and will not permit any waste or strip of the land or premises, that the Buyer will keep the premises free from construction and all other liens and same the Seller(s) harmless from such liens and reimburse Seller(s) all costa and attorneys's fees incurred by Seller(s) in defending against such liens; that Buyer(s) will pay all taxes hereafter levied against the property, as well as all water service rents, public charges and municipal liens which hereafter lawfully may be imposed upon the premises, all promptly before the same or any party thereof become past due and delinquent.

Buyer(s) Duty to provide insurance.

At Buyer(s)'s expense, Buyer(s) will insure and keep insured all buildings now or hereafter erected on the premises against loss or damage by fire in an amount of not less than $_____ in a company or companies satisfactory to the Seller(s), specifically naming seller(s) as an additional insured, with losses payable first to the Seller(s) and then to the Buyer(s) as their respective interest may appear and all policies of insurance shall be delivered to the Seiler(s) as soon as insured.

Seller(s)'s rights to cure defects without waiver of breach of contract.

If the Buyer(s) fail to pay any liens, costs, water rents, taxes or charges, the Seller(s) may do so and any payment so made shall be added to and become part of the debt secured by the Contract and shall bear interest at the above stated rate per annum, without waiver, however, on any right arising to the Seller(s) for Buyer(s)'s breach on contract.

Seller(s)'s Obligation to Provide Marketable Title

The Seller(s) agrees to furnish within 15 days of the date of the Contract, at Seller(s)'s expense a title insurance policies insuring in an amount equal to the purchase price, marketable title in and to the promises in the Seller(s) on or subsequent to the date of this Contract and further, save and except the usual printed exceptions and the building or other restrictions and easements now of record, if any. Seller(s) also agrees that when the purchase price is fully paid and upon request and upon surrender to this Contract, Seller(s) will deliver a good and sufficient deed conveying the premises in fee simple until the Buyer(s), Buyer(s)'s heirs, assigns, free and clear of encumbrances as of the date herein identified and fee and clear of all encumbrances that date placed, permitted or arising by, through or under the Sellers(s), except the easements, restrictions and the taxes, municipal liens, water rents and public charges as assumed by the Buyer(s) and further excepting all liens and encumbrances created by the Buyer(s) or Buyer(s)'s assigns.

Time is of the essence

It is further understood and agreed between the parties that time is of the essence

in this Contact, and should the Buyer(s) fail to make the payments as required, or any of them, punctually within 20 days of the time limited therefor, or failure to keep any of its obligations under this Contract, then the Seller(s) shall have the following rights and options:

(1) to declare the contract cancelled for default and thus null and void and to declare the Buyer(s)'s rights forfeited and the debt extinguished, and to retain sums previously paid under this Contract, subject to the Seller(s) complying with all applicable law pertaining to the exercise of this remedy, including ORS 93.905, et seq., or successor statutes;

(2) to declare the whole unpaid principal balance of the purchase price with the interest thereon at once due and payable; and/or

(3) to foreclose this Contract by suit in equity.

In any of such case, all rights and interest created or then existing in favor of the Buyer(sa) as against the Seller(s) hall utterly cease and the right to possession of the premises described above and all other rights acquired by the Buyer(s) under this Contract revert to an revest in the Seller(s) without an act of re-entry, or any other act of the seller to be performed and without any right of the Buyer(s) to return, reclaim or seek compensation of monies paid on the account of the purchase un the property as absolutely, fully and completely as if this contract and such payment s had never been made, and in case of such default all payment previously made on this contract are to be retained by and belong to the seller as the agreed and reasonable rent of the premises up to the time of such default and the Seller(s) in case od such default, shall have right immediately, or at any time thereafter, to enter upon the land, without process of law, and take immediate possession thereof, together with all the improvements and appurtenances thereto on thereto belonging.

Buyer(s) further agrees that Seller(s)'s failure to at any time require performance by Buyer(s) of

any provision shall in no way affect the Seller(s)'s right to enforce the same, nor shall any waiver by the Seller(s) of any breach of any provision bye a waiver or any succeeding breach of any such provision, or a waiver of the provision itself.

Seller(s), Seller(s)'s agents, and the holder of any existing encumbrance to which the lands and premises are subject may enter upon the lands and premises at reasonable times, upon reasonable prior notice, for the purpose in inspecting the property.

In case suit or action is instituted to foreclose this Contract or t enforce any provision thereof, the losing party in any suit or action shall pay the reasonable attorney's fees to be fixed by the trial court in favor of the prevailing party, and if any appeal is take from the decision of the trial court, such further sum as may be fixed by the appellate court as the prevailing party's reasonable attorney's fees and costs in the appellate court.

In construing this CONTRACT, where the context requires, the singular includes the plural, grammatical changes shall be made so that the deed shall apply equally to corporations and to individuals, and handwritten or typed changes control the printed text.

This Contract shall bind and inure to the benefit of, as the circumstances, may require, not only the immediate parties hereto, but also their respective heirs, assigns, executors, administrators, personal representatives and successors in interest as well

In witness whereof, the Buyer(s) and Seller(s) have executed this instrument in duplicate this 5th day of October, year 2017, and if any of the undersigned ins a corporation, it has caused its name to be signed by an officer or other person duly authorized to do so by action of the board of directors.

Purchaser: _____     Date: _10-20-17_

Purchaser: _____     Date: _____

Seller: _Anita Simpson_     Date: _____

Seller: _____     Date: _____

Contingency release clause
If you have not specified a deadline for your contingencies, such as 5 or 10 days for a professional inspection, or 30 days for mortgage approval, you can expect a well-advised home seller to set a time limit on your contingencies. Or, if you make your home purchase contract contingent on the sale of your current residence (which few home sellers will accept), expect the seller to counteroffer, giving you 24 or 48 hours after an acceptable second purchase offer is received from a second buyer to remove your contingency clause for sale of your old home. This is reasonable and fair to both buyer and seller.

**An "As Is" clause**

Some home sellers insist on selling their homes "as is." That means the seller and realty agent make no representations or warranties and won't pay for any repairs. However, the seller and realty agents must still disclose any known home defects to the buyer. Avoid agreeing to an "as is" clause if you want the seller to pay for repairs of known serious defects.

When describing the purchase terms, don't specify "All cash to seller" if you require a new mortgage to provide that cash. Be sure your offer contains a clause making your offer contingent on approval of the mortgage. Even if you got preapproved for a mortgage, the lender can avoid making the loan by low-balling the appraisal.

The mortgage you want to obtain should be specified with detail, such as a new 30-year fixed interest rate mortgage of at least $100,000 with interest not exceeding 8 percent, a loan fee of not more than 2 percent, and a monthly payment not exceeding $733.76. If you want the seller to help finance the sale, by carrying back either a first or second mortgage, here is where you specify the terms you want.

**Personal property**

If you want any personal property included in the home sale, such as the kitchen appliances, be sure to specifically itemize them in your purchase offer. For example, specify the "General Electric side-by-side refrigerator with electronic monitor now on the premises." This stops the seller from substituting inferior replacement personal property at the last minute.

**Time for acceptance of your purchase offer**

Your purchase offer should contain a short time for the seller's acceptance. Twenty-four hours is usually sufficient unless the seller is out of town. Don't make your offer valid for a long time period because then it will be "shopped" by the realty agent to see if a better offer from another buyer can be obtained.

**•A professional inspection**

The buyer should pay for the professional inspection because it's for the buyer's benefit. Accompany the professional inspector. When a defect discovered is serious, such as a cracked chimney, expect the seller to pay for the repair. If the seller refuses to pay for major necessary repairs, disapprove the report and get your good faith deposit refunded.

**•Seller's disclosure of known defects**

Many states, led by California and Maine, now require home sellers and their realty agents to disclose in writing any known defects in the residence. If your state requires seller disclosure of defects, your purchase offer should be contingent upon your approval of the seller's disclosure.

**•Liquidated damages clause**

This clause specifies maximum damages a defaulting buyer must pay to the home seller if the buyer doesn't complete the purchase as agreed. Some state laws set maximum liquidated damages. As a buyer, you may want to agree to liquidated damages so you can't be held liable for more than the specified sum if you default.

**•Arbitration of disputes clause**

Most printed real estate purchase contracts now contain an optional clause whereby the buyer and seller agree to arbitrate disputes. Misguided real estate agents, blindly following recommendations from their real estate trade groups, often suggest signing the arbitration clause. I strongly disagree. Too many uncontrollable things can go wrong with arbitration of disputes. My recommendation is don't agree to arbitration. If a dispute arises later, at that time you can decide if you prefer to go to arbitration or mediation rather than become involved in a lawsuit.
•An all-inclusive weasel clause
Although the professional inspection contingency clause is sufficient, you might want to also include an all-inclusive weasel clause such as "This purchase offer is contingent upon buyer's attorney satisfactory inspection and approval of the purchase contract within 10 business days." This gives you a "free look" while your attorney, CPA or other trusted business advisor reviews the agreement.

Article 3. Purchaser's Mortgage Contingency

3.01 Application. If an amount is specified at item VIII, Purchaser will (promptly after this Contract is signed) use best efforts to obtain a first mortgage on the Premises in that amount and on the terms specified in section D-3.

3.02 Alternate Financing. If Purchaser is unable to obtain such commitment and gives notice thereof to Seller by the time specified in or determined pursuant to section D-3-j, Seller may within 21 days after the effective date of such notice by Purchaser (a) procure for Purchaser a firm commitment from an institutional lender for a first mortgage loan meeting such terms or (b) accept a Purchase Money Mortgage on such terms. If Seller does so within such additional 21-day time period, item VIII and section D-3 will no longer apply; otherwise this Contract will terminate and section 1 7.03 will apply.

3.03 A lender that makes any such loan is referred to herein as "Purchaser's Lender."

Article 4. Title Insurance and Condition of Title

4.01 Title Commitment. Promptly after the Execution Date Purchaser will apply (directly or through Purchaser's Lender) for issuance by Title Insurer of a commitment for an owner's title insurance policy.

a.The commitment is (i) to be in the amount of the Purchase Price, (ii) to include a zoni ng endorsement that insures Purchaser that the existing structures on, and the present use of, the

Real Estate do not violate any zoning laws, regulations and ordinances, (iii) to include extended coverage over general exceptions, and (iv) to cover title to the Real Estate on or after the Date of Execution.

b.On receipt of the commitment Purchaser will promptly cause a copy of the commitment to be delivered to Seller's attorney. Seller will use best efforts to cause the commitment to conform to the condition of title specified in Section 4.02 by the earlier of (i) 63 days after Seller receives a copy of the commitment and (ii) the expiration date of any written loan commitment of Purchaser's Lender that was delivered to Purchaser prior to the scheduled date of Closing.

c.Seller will pay for the title insurance commitment and the resulting owner's title policy.

4.02 Condition of Title. Seller will use best efforts to convey, and Purchaser will accept if ten dered, fee simple title to the Real Estate in accordance with the terms of this Contract, subject only to (a) the matters set forth in Schedule B ("Permitted Exceptions"), (b) matters that are insured against pursuant to section 15.04-b, and (c) any other matters as to which both (i) Title Insurer is willing, without additional premium, to insure by endorsement and (ii) Purchaser's Lender, if any, will accept, except that if such acceptance by Purchaser's Lender is unreasonably withheld or delayed, the acce ptance will be deemed to have been given.

Article 5. Inspection, Due Diligence and Termination

5.01 Information Regarding the Premises. Within ten days from the Date of Execution Seller will make available to Purchaser for inspection and copying (a) the documents that fix all the terms of any Leases and of any Tenancies, (b) the documents that are referred to in sections 8.04, 8.06, 8.07 and 8.08, and (c) such building plans and specifications, and such operating statements an d balance sheets for the current fiscal year and for the immediately preceding fiscal year, as are in the possession or control of Seller and relate to the Premises.

5.02 Inspection of the Premises. Within 35 days after the Date of Execution Purchaser may inspect the Premises and obtain soil tests and an environmental audit of the Premises, all subject to the rights of any tenants. Seller will use best efforts to obtain any necessary consents from tenants.

5.03 Purchaser's Electi on to Terminate. Purchaser may elect to terminate this Contract by notice

to Seller at any time prior to five days after expiration of the time period that is provided for by section 5.02 if in Purchaser's absolute discretion, which is not subject to question or review for any reason, (a) the material that is described in section 5.01 has not been made available to Purchaser as called for by that section, (b) Purchaser has not been able to inspect the Premises and obtain soil tests and an environmental audit of the Premises, or (c) Purchaser is dissatisfied with any matters disclosed by such documents, inspection or tests. If Purchaser so elects to terminate this Contract, section 17.03 will apply.

5.04 Acceptance of the Premises. If Purchaser does not elect to terminate this Contract pursuant to section 5.03 and Purchaser is otherwise required to proceed hereunder, Seller will deliver (and Purchaser will accept) the Premises in substantially the same condition at closing as on the Date of Execution, except for ordinary wear and tear, and matters described in Article 11, but Purchaser will have the benefit of any representations and warranties by Seller relating to the Premises.

Purchaser: _____ Date: _10-30-17_

Purchaser: _____ Date: _____

Seller: _Caotta Simpson_ Date: _____

Seller: _____ Date: _____

# Exhibit "B"

OMB Approval No 2502-0265



## A. Settlement Statement (HUD-1)

**B. Type of Loan**

| | | | |
|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. **GA-17-1808**    7. Loan No.    8. Mortgage Insurance Case No. |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| Wholesale Listings Co<br>1372 West Peachtree Street<br>Atlanta, GA 30309 | Ruth Fermino<br>1564 Park Road Southeast<br>Atlanta, GA 30315 | Lima One Capital |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 1564 Park Road Southeast<br>Atlanta, GA 30315 | Integrity Settlement Services | **01/04/2018**<br>Funding Date:<br>**01/04/2018**<br>Disbursement Date:<br>**01/04/2018** |
| | Place of Settlement:<br>401 E Jackson St Suite 3300 Tampa FL 33602 | |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | $250,500.00 | 401. Contract sales price | $250,500.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $875.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustment for items paid by seller in advance** | | **Adjustment for items paid by seller in advance** | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | $251,375.50 | **420. Gross Amount Due to Seller** | $250,500.00 |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit | | 501. Excess deposit (see instruction) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $625.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of First Mortgage Loan | |
| 205. | | 505. Payoff of Second Mortgage Loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/Town Taxes to 11/08/2017 | $494.92 | 510. City/Town Taxes to 11/08/2017 | $494.92 |
| 211. County Taxes to 11/08/2017 | $161.58 | 511. County Taxes to 11/08/2017 | $161.58 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $0.00 | **520. Total Reduction Amount Due Seller** | $1,281.50 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $251,375.50 | 601. Gross amount due to seller (line 420) | $250,500.00 |
| 302. Less amounts paid by/for borrower (line 220) | $0.00 | 602. Less reductions in amounts due seller (line 520) | $1,281.50 |
| **303. Cash** ☒ From ☐ To Borrower | $251,375.50 | **603. Cash** ☒ To ☐ From Seller | $249,218.50 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

**L. Settlement Charges**

| Division of commission (line 700) as follows : | | | |
|---|---|---|---|
| 701. $ | | | |
| 702. $ | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| | | | |
| 801. Our origination charge | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE #A) | | |
| 804. Appraisal fee | (from GFE #3) | | |
| 805. Credit report | (from GFE #3) | | |
| 806. Tax service | (from GFE #3) | | |
| 807. Flood certification | (from GFE #3) | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| | | | |
| 901. Daily interest charges from 11/08/2017 to 12/01/2017 | (from GFE #10) | | |
| 902. Mortgage insurance premium | (from GFE #3) | | |
| 903. Homeowner's insurance | (from GFE #11) | | |
| 904. | | | |
| | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. Homeowner's insurance | | | |
| 1003. Mortgage insurance | | | |
| 1004. Property taxes | | | |
| 1005. | | | |
| 1006. | | | |
| 1007. Aggregate Adjustment $0.00 | | | |
| | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | $625.00 | |
| 1102. Settlement or closing fee to Integrity Settlement Services 625.00 | | | $625.00 |
| 1103. Owner's title insurance to Old Republic National Title Insurance Company | (from GFE #5) | | |
| 1104. Lender's title insurance to Old Republic National Title Insurance Company | | | |
| 1105. Lender's title policy limit $ | | | |
| 1106. Owner's title policy limit $ | | | |
| 1107. Agent's por on of the total tle insurance premium to Integrity Settlement Servics | | | |
| 1108. Underwriter's portion of the total title insurance premium to Old Republic National Title Insurance Company | | | |
| 1109. | | | |
| 1110. | | | |
| 1111. | | | |
| | | | |
| 1201. Government recording charges | (from GFE #7) | | |
| 1202. Deed $ Mortgage $ Release $ to Fulton County Recording Office | | | |
| 1203. Transfer taxes | (from GFE #8) | $250.50 | |
| 1204. City/County tax/stamps Deed $ Mortgage $ | | | |
| 1205. State tax/stamps Deed $250.50 Mortgage $ to Fulton County Recording Office | | | |
| 1206. | | | |
| | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | $875.50 | $625.00 |

| Charges That Cannot Increase | HUD-1 Line Number | | |
|---|---|---|---|
| Our origination charge | #801 | | |
| Your credit or charge (points) for the specific interest rate chosen | #802 | | |
| Your adjusted origination charges | #803 | $0.00 | |
| Transfer taxes | #1203 | | $250.50 |

| Government recording charges | 1201 | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total | | | |
| Increase between GFE and HUD-1 Charges | | | % |

| Initial deposit for your escrow account | 1001 | | |
|---|---|---|---|
| Daily interest charges | 901 | | |
| Homeowner's insurance | 903 | | |
| Title services and lender's title insurance | 1101 | | $625.00 |
| | | | |

## Loan Terms

| Your initial loan amount is | |
|---|---|
| Your loan term is | |
| Your initial interest rate is | |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | _____ includes <br> [X] Principal <br> [X] Interest <br> [ ] Mortgage Insurance |
| Can your interest rate rise? | [X] No, [ ] Yes, it can rise to a maximum of _____. The first change will be on _____ and can change again every _____ months after _____. Every change date, your interest rate can increase or decrease by _____. Over the life of the loan, your interest rate is guaranteed to never be lower than _____ or higher than _____. |
| Even if you make payments on time, can your loan balance rise? | [X] No, [ ] Yes, it can rise to a maximum of _____ |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | [X] No, [ ] Yes, the first increase can be on _____ and the monthly amount owed can rise to _____. The maximum it can ever rise to is _____ |
| Does your loan have a prepayment penalty? | [X] No, [ ] Yes, your maximum prepayment penalty is _____ |
| Does your loan have a balloon payment? | [X] No, [ ] Yes, you have a balloon payment of _____ due in _____ years on _____ |
| Total monthly amount owed including escrow account payments | [X] You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. <br><br> [ ] You have an additional monthly escrow payment of _____ that results in a total initial monthly amount owed of _____. This includes principal, interest, any mortgage insurance and any items checked below: <br><br> [ ] Property taxes [ ] Homeowner's insurance <br> [ ] Flood insurance [ ] <br> [ ] [ ] |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

See signature addendum

**Signature Addendum**

Wholesale Listings Co LLC, a Georgia Limited Liability Company

By: _____          _____
                                                                    Ruth Fermino                                      Date

   Casita Simpson, Manager                      Date


The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

_____
Settlement Agent                                                                                                           Date

# Exhibit "C"

OMB Approval No 2502-0265



## A. Settlement Statement (HUD-1)

| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. GA-17-1808 | 7. Loan No. | 8. Mortgage Insurance Case No. |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| ESRG Georgia Group I<br>5317 Peachtree Boulevard<br>Chamblee, GA 30341 | Wholesale Listings Co<br>1372 West Peachtree Street<br>Atlanta, GA 30309 | |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 1564 Park Road Southeast<br>Atlanta, GA 30315 | Integrity Settlement Services | 01/04/2018<br>Funding Date:<br>01/04/2018 |
| | Place of Settlement:<br>401 E Jackson St Suite 3300 Tampa FL 33602 | Disbursement Date:<br>01/04/2018 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | $300,000.00 | 401. Contract sales price | $300,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $1,642.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | $301,642.00 | **420. Gross Amount Due to Seller** | $300,000.00 |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit | $3,000.00 | 501. Excess deposit (see instruction) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $625.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of First Mortgage Loan | $255,774.57 |
| 205. | | 505. Payoff of Second Mortgage Loan | |
| 206. | | 506. Broker Fee | $1250.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes to 12/27/2017 | $494.92 | 510. City/Town Taxes to 12/27/2017 | $494.92 |
| 211. County Taxes to 12/27/2017 | $161.58 | 511. County Taxes to 12/27/2017 | $161.58 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $3,656.50 | **520. Total Reduction Amount Due Seller** | $258,306.07 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $301,642.00 | 601. Gross amount due to seller (line 420) | $300,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | $3,656.50 | 602. Less reductions in amounts due seller (line 520) | $258,306.07 |
| 303. Cash ☒ From ☐ To Borrower | $297,985.50 | 603. Cash ☒ To ☐ From Seller | $41,693.93 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

**L. Settlement Charges**

| | | | |
|---|---|---|---|
| Division of commission (line 700) as follows : | | | |
| 701. $ | | | |
| 702. $ | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| | | | |
| 801. Our origination charge | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE #A) | | |
| 804. Appraisal fee | (from GFE #3) | | |
| 805. Credit report | (from GFE #3) | | |
| 806. Tax service | (from GFE #3) | | |
| 807. Flood certification | (from GFE #3) | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| | | | |
| 901. Daily interest charges from 12/27/2017 to 01/01/2018 | (from GFE #10) | | |
| 902. Mortgage insurance premium | (from GFE #3) | | |
| 903. Homeowner's Insurance | (from GFE #11) | | |
| 904. | | | |
| | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. Homeowner's Insurance | | | |
| 1003. Mortgage Insurance | | | |
| 1004. Property taxes | | | |
| 1005. | | | |
| 1006. | | | |
| 1007. Aggregate Adjustment $0.00 | | | |
| | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | $625.00 | |
| 1102. Settlement or closing fee to Integrity Settlement Services $625.00 | | | $625.00 |
| 1103. Owner's title insurance to Old Republic National Title Insurance Company | (from GFE #5) | $717.00 | |
| 1104. Lender's title insurance to Old Republic National Title Insurance Company | | | |
| 1105. Lender's title policy limit $ | | | |
| 1106. Owner's title policy limit $300,000.00 | | | |
| 1107. Agent's por on o f the total tile insurance premium to Integrity Settlement Services | | | |
| 1108. Underwriter's portion of the total title insurance premium to Old Republic National Title Insurance Company $717.00 | | | |
| 1109. | | | |
| 1110. | | | |
| 1111. | | | |
| | | | |
| 1201. Government recording charges | (from GFE #7) | | |
| 1202. Deed $ Mortgage $ Release $ to Fulton County Recording Office | | | |
| 1203. Transfer taxes | (from GFE #8) | $300.00 | |
| 1204. City/County tax/stamps Deed $ Mortgage $ | | | |
| 1205. State tax/stamps Deed $300.00 Mortgage $ to Fulton County Recording Office | | | |
| 1206. | | | |
| | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | $1,642.00 | $625.00 |

| Charges That Cannot Increase | HUD-1 Line Number | | |
|---|---|---|---|
| Our origination charge | #801 | | |
| Your credit or charge (points) for the specific interest rate chosen | #802 | | |
| Your adjusted origination charges | #803 | $0.00 | |
| Transfer taxes | #1203 | | $300.00 |

| | | | |
|---|---|---|---|
| Government recording charges | 1201 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total | | | |
| Increase between GFE and HUD-1 Charges | | | % |

| | | | |
|---|---|---|---|
| Initial deposit for your escrow account | 1001 | | |
| Daily interest charges | 901 | | |
| Homeowner's insurance | 903 | | |
| Title services and lender's title insurance | 1101 | | $625.00 |
| Owner's title insurance | 1103 | | $717.00 |

## Loan Terms

| Your initial loan amount is | |
|---|---|
| Your loan term is | |
| Your initial interest rate is | |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | includes <br> [X] Principal <br> [X] Interest <br> [ ] Mortgage Insurance |
| Can your interest rate rise? | [X] No, [ ] Yes, it can rise to a maximum of ___. The first change will be on ___ and can change again every ___ months after ___. Every change date, your interest rate can increase or decrease by ___. Over the life of the loan, your interest rate is guaranteed to never be lower than ___ or higher than ___. |
| Even if you make payments on time, can your loan balance rise? | [X] No, [ ] Yes, it can rise to a maximum of ___ |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | [X] No, [ ] Yes, the first increase can be on ___ and the monthly amount owed can rise to ___. The maximum it can ever rise to is ___ |
| Does your loan have a prepayment penalty? | [X] No, [ ] Yes, your maximum prepayment penalty is ___ |
| Does your loan have a balloon payment? | [X] No, [ ] Yes, you have a balloon payment of ___ due in ___ years on ___. |
| Total monthly amount owed including escrow account payments | [X] You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself. <br><br> [ ] You have an additional monthly escrow payment of ___ that results in a total initial monthly amount owed of ___. This includes principal, interest, any mortgage insurance and any items checked below: <br><br> [ ] Property taxes   [ ] Homeowner's insurance <br> [ ] Flood insurance   [ ] <br> [ ]   [ ] |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

**See signature addendum**

Signature Addendum

ESRG Georgia Group I LLC, a Georgia Limited Liability Company | Wholesale Listings Co LLC, a Georgia Limited Liability Company

By: | By:

_____ Date | _____ Date
Susan Tanoe, Manager | Casita Simpson, Manager

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

_____
Settlement Agent | Date

# Exhibit "D"

## ASSIGNMENT OF CLAIM

This document is an assignment by Lima One Capital, LLC, a Georgia limited liability company (hereinafter identified as the CLAIMANT).

CLAIMANT assigns to the following person or entity hereinafter identified here as ASSIGNEE:

| | |
|---|---|
| Name: | Lima One Capital Special Servicing, Inc., a Delaware corporation |
| Address: | 201 E. McBee Ave, Suite 300 Greenville, SC 29601 |

CLAIMANT has designated and appointed ASSIGNEE to act as CLAIMANT'S agent and representative for CLAIMANT'S sole benefit pursuant to that certain agency agreement (the "Agency Agreement") between CLAIMANT and ASSIGNEE with respect to those certain legal claims CLAIMANT has arising out of the purported sale of 1564 Park Road SE, Atlanta, GA 30315 and related financing provided by CLAIMANT.

CLAIMANT hereby assigns, pursuant to the terms of the Agency Agreement, only those claims that are against the following persons or entities:

| | | | |
|---|---|---|---|
| Name: | E.S. Real Estate Consortium, Inc. | Name: | Consortium Title, LLC |
| Address: | 5317 Chamblee Blvd Suite 316 Chamblee, GA 30341 | Address: | 1775 Tysons Blvd Tysons, VA 22182 |
| Name: | Integrity Settlement Services, LLC | Name: | Aneaka English |
| Address: | 401 E. Jackson Street Suite 3300 Tampa, FL 33602 | Address: | 3491 Cragstone Rd Lithonia, GA 30038 |
| Name: | Coleen Thomas | Name: | Casita Simpson |
| Address: | 1775 Tysons Blvd Tysons, VA 22182 | Address: | 5902 Bahama Court West Palm Beach, FL 33407 |

CLAIMANT has duly executed this assignment to be effective this _____ day of August, 2018.

CLAIMANT:

8/21/18

Date Executed

By:  Lima One Management, LLC, a South
Carolina limited liability company

Its:    Manager

By:  _____

John S. Warren, Jr.

Its:    Manager

Open.26479.80